NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DANIEL C.S. AHN,** | Docket No.: 14-cv-1987 |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **KOREA ADVANCED INSTITUTE OF SCIENCE AND TECHNOLOGY and NAM PYO SUH,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendants Korea Advanced Institute of Science and Technology ("KAIST") and Nam Pyo Suh ("Suh") filed two motions. The first is a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The second motion is a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 for the filing of a frivolous complaint. For the reasons set forth below, the motion to dismiss is granted. The motion for sanctions is denied.

## I.  BACKGROUND

### A.  Parties

Defendant KAIST is a South Korean University. (Amended Verified Complaint ("AVC") at ¶ 3). Defendant Suh is a citizen of Massachusetts who is domiciled in Massachusetts. (AVC at ¶ 4). Suh was the President of KAIST at all relevant times. (AVC at ¶ 5). Suh was also the first chairman of the KAIST

Development Foundation ("KDF"). KAIST was involved in the development of a "Mobile Harbor" project, a technology for loading/unloading shipping containers, in which a moveable harbor goes out to a cargo ship rather than a cargo ship going into a port for loading/unloading. (Affidavit of Daniel C.S. Ahn ("Ahn Aff."), Exhibit K). KDF organized an entity called Mobile Harbor, Inc. to "execute the industrial aspects of the Mobile Harbor project." (AVC at ¶ 17).

Plaintiff Daniel C.S. Ahn is a citizen of New Jersey who is domiciled in New Jersey. (AVC at ¶ 6). The AVC alleges that "Suh, on behalf of Defendant KAIST," offered Ahn a position as a Distinguished Professor at KAIST and as the CEO of Mobile Harbor, Inc. (AVC at ¶ 14). Ahn alleges that "Suh, as the President of Defendant KAIST and as chairman of the KDF, made integral promises to the Plaintiff." (AVC at ¶ 18). These promises included the following: 1.) Plaintiff would be entitled to 50% of the royalty and intellectual property rights for each and every patent application that Plaintiff submitted, and 2.) KAIST would ensure continued funding for Mobile Harbor, Inc. (AVC at ¶ 20). In May 2009, Ahn accepted the position for a term of three years. (AVC at ¶ 21). The AVC alleges that by January 1, 2010, KAIST stopped funding Mobile Harbor, Inc. (AVC at ¶ 37). It also alleges that Defendants interfered with Plaintiff's ability to procure outside funding when they refused to transfer Mobile Harbor, Inc.'s intellectual property rights to a joint venture consisting of Mobile Harbor, Inc. and an outside investor. (AVC at ¶¶ 47-71).

## B.     The Funding of the Mobile Harbor Project

As CEO of Mobile Harbor, Inc., Ahn had the duty of managing the business and industrial aspects of the Mobile Harbor project. (AVC at ¶ 25). Initially, KAIST allocated approximately $5 million to Mobile Harbor, Inc. for the development of two mobile harbor models. (AVC at ¶ 23). According to Ahn, the $5 million was not nearly enough, and KAIST did not allot any more money to the project. Ahn began seeking outside capital to fund the construction of mobile harbor prototypes. (*See* Ahn Aff. at ¶ 9, Exhibit E).

## C.     Failed Joint Venture with Coastal Mechanics

Meanwhile, the Port Authority of New York and New Jersey ("Port Authority") expressed interest in a mobile harbor. The Bayonne Bridge was not high enough for large container ships to pass under, and the mobile harbor was a less expensive alternative to raising the height of the bridge. (AVC at ¶¶ 44-46). The Port Authority's interest in a mobile harbor brought the financial interest of a Texas

corporation called Coastal Mechanics Company, Inc. ("Coastal Mechanics"). (AVC at ¶ 47). Specifically, Coastal Mechanics was willing to provide an initial investment of $6 million in a joint venture (the "Joint Venture"), with subsequent funding on an as-needed basis. (AVC at ¶ 48). The purpose of the Joint Venture was to design and produce several mobile harbor models. (AVC at ¶ 56).

Mobile Harbor, Inc. hired a third-party firm, **AJ Industries**, to negotiate the terms of the Joint Venture. (AVC at ¶ 51). The Joint Venture Agreement was executed on February 18, 2011. (AVC at ¶ 55). In the terms of the Joint Venture Agreement, Mobile Harbor, Inc. was to give Coastal Mechanics a 75% interest in the Joint Venture, and Mobile Harbor, Inc. was to cede all its intellectual property rights to the Joint Venture. (AVC at ¶ 57, Exhibit D to AVC). The intellectual property rights included 14 patents that listed Ahn as the "inventor" and KAIST as the "submission organization." (Ahn Aff. at ¶ 11).

Although KAIST allegedly gave Ahn consent to execute the Joint Venture Agreement, KAIST refused to transfer the intellectual property rights. (AVC at ¶ 60). Plaintiff specifically attributes this refusal to Suh's knowing and intentional coercion of the members of the KDF and KAIST. (AVC at ¶ 85). The refusal to transfer the intellectual property rights caused the termination of the Joint Venture Agreement. (AVC at ¶ 66). Plaintiff claims that after KAIST refused to keep funding Mobile Harbor, Inc. and effectively killed the Joint Venture, he had to "lend" Mobile Harbor, Inc. $380,000 of his personal assets to continue the operations of Mobile Harbor, Inc. (AVC at ¶¶ 40-41).

### D.    The South Korean Case ("*Ahn I*")

Ahn initially sued KAIST, KDF, and Suh in the Suwon District Court in South Korea. (Exhibit K to AVC ("*Ahn I*")). In *Ahn I*, Ahn sought ₩356,119,268 (South Korean Won), which is about $340,000 (U.S. Dollars). This sum represents the personal assets that Ahn "loaned" to Mobile Harbor, Inc. The South Korean Court held that Ahn was not entitled to the money he sought because the underlying loan agreement was invalid under South Korean law.

The South Korean Court also determined that KAIST had no obligation to support the operating expenses of Mobile Harbor, Inc. (*Ahn I* at 8). This particular factual finding is critical to our dismissal of this case. *See infra Part IV.B.*

### E.   The New Jersey Case ("*Ahn II*")

After losing his case in South Korea, Ahn filed the instant case in this Court. The AVC has four causes of action. Count 1 claims that Defendants tortiously interfered with the contract between Mobile Harbor, Inc. and Coastal Mechanics by refusing to transfer the intellectual property rights to the Joint Venture. Count 2 claims common law fraud, and Count 3 claims fraudulent inducement. Read together, these Counts allege that the Defendants induced Ahn to take the position as professor and CEO with false promises to keep Mobile Harbor, Inc. funded and to share 50% of royalties and intellectual property rights. Count 4 claims breach of fiduciary duty against Suh. The AVC alleges that Suh established a fiduciary relationship with Ahn and breached that duty when he used his influence as President of KAIST and Chairman of the KDF to cease funding Mobile Harbor, Inc. (AVC at ¶ 111).

## II.   SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000, and the case is between citizens of different states, and a citizen of a foreign state is an additional party.

## III.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

We address the motion to dismiss for lack of personal jurisdiction first because personal jurisdiction is a threshold issue that must be decided before reaching the underlying merits of the case. *See Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig.*, MDL 1203, 2010 WL 2264869, at *2 (E.D. Pa. June 4, 2010) ("A court must have personal jurisdiction over the parties in order for it to hear their dispute.").

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint for lack of personal jurisdiction. "[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court applies the relevant long-arm statute of the forum state to determine if it permits the exercise of jurisdiction. *Id.* at 259. Second, the court applies the principles of the Due Process Clause of the Constitution. *Id.* In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of

personal jurisdiction to the fullest limits of due process.  *See* N.J. Court. R. 4:4-4(c); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981).  Personal jurisdiction under the Due Process Clause requires a plaintiff to show that the defendant has purposefully directed its activities toward the residents of the forum state, or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

"The due process limit to the exercise of personal jurisdiction is defined by a two-prong test.  First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum."  *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'"  *Id.* at 150-51 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts" over a non-resident defendant can be established in one of two ways: general jurisdiction or specific jurisdiction.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009).  General jurisdiction exists where the non-resident defendant has general contacts with the forum state that are "continuous and systematic."  *Arlington Indus., Inc. v. Elec. Custom Distributors, Inc.*, 817 F. Supp. 2d 473, 477 (M.D. Pa. 2011) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-166 (1984)).  General jurisdiction allows a court to hear any and all claims against a party, even where the cause of action is unrelated to the forum.  *Id.* at 477.  Contacts with a forum are "continuous and systematic" where the Defendant is "essentially at home in the forum state."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (U.S. 2014).

"When general jurisdiction is lacking, the lens of judicial inquiry narrows to focus on specific jurisdiction."  *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995).  Specific jurisdiction is established when a non-resident defendant has "purposefully directed" his activities at a resident of the forum, and the injury arises from or is related to those activities.  *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (*citing Burger King*, 471 U.S. at 472).  Analysis for specific jurisdiction is a three-part inquiry.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "'purposefully directed' his activities" at the forum.  *Id.* (*citing Burger King*, 471 U.S. at 472).  The existence of the first element will vary with the "quality and nature of the defendant's activity," but there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d at 317 (*citing Helicopteros*, 466 U.S. at 414). Third, if the prior two requirements are met, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Id.* (*citing Burger King*, 471 U.S. at 476). Specific jurisdiction comports with fair play and substantial justice where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (U.S. 2011).

Plaintiff also argues that Defendants' minimal contacts should be considered under the *Calder* effects test. *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* test determines whether specific jurisdiction exists in certain contexts, even where the traditional test for minimal contacts would fail. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 108 (3d Cir. 2004). The *Calder* test has three prongs: (1) the defendant must have committed an intentional tort; (2) the plaintiff must have felt the brunt of the harm caused by that tort in the forum; and (3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

### B.  Burden of Proof

"The plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). There are three methods for assessing whether a plaintiff has proven personal jurisdiction. *In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liab. Litig.*, MDL 1203, 2010 WL 2264869, at * 2 n. 6 (E.D. Pa. June 4, 2010) (*citing Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675-76 (1st Cir. 1992)). Under "the prima facie method," which is the only test that can be used prior to an evidentiary hearing, we consider "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *In re Diet Drugs*, 2010 WL 2264869, at * 2; *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

### C.    Minimal Contacts Analysis

Plaintiff has established prima facie minimal contacts with respect to Counts 2 & 3 (the fraud claims) but not with respect to Count 1 (tortious interference) or Count 4 (breach of fiduciary duty).  *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n.1 (3d Cir. 2004) ("[A] court must analyze questions of personal jurisdiction on a defendant-specific and claim-specific basis.").

Plaintiff supplies evidence of minimal contacts in the form of a sworn affidavit.  Plaintiff states in the affidavit that the Defendants approached him about becoming the CEO of Mobile Harbor, Inc. and Distinguished Professor at KAIST while he was in New Jersey.  (Affidavit of Daniel Ahn ("Ahn Aff.") at ¶ 4).  He states that a "good portion" of his efforts to market the Mobile Harbor project were "done from New Jersey."  (Ahn Aff. at ¶ 8).  In July 2009, Ahn and three other KAIST members met at a Marriott Hotel in Teaneck, New Jersey "to discuss MH business in NY/NJ port."  (Ahn Aff. at ¶ 9).  In October 2009, March 2010, June 2010, and November 2011, Ahn and other KAIST members met with the Port Authority in New Jersey.  (Ahn Aff. at ¶ 9).  KAIST produced a brochure to market the Mobile Harbor concept to the Port Authority.  (Ahn Aff. at ¶ 10).  Plaintiff split his time between Korea and New Jersey while working for KAIST.  (*Id*.).  He communicated with Suh via phone and e-mail multiple times while he was in New Jersey.  (*Id*.).  One of the KAIST board members, Dr. Samuel J. Kim, is a New Jersey resident.  (*Id*.).  Finally, KAIST approved the use of AJ Industries, a New Jersey company, to meet with the Port Authority on behalf of Mobile Harbor, Inc.  (*Id*.).

Even if we accept all these allegations as true, this does not rise to the level of "continuous and systematic contacts" with New Jersey.  It could not reasonably be said that KAIST and Suh are "essentially at home" in New Jersey.  *Daimler AG v. Bauman*, 134 S. Ct. at 761.  General jurisdiction therefore does not apply.

Plaintiff fails to establish specific jurisdiction over Count 1 (tortious interference with a contract) and Count 4 (breach of fiduciary duty) because these causes of action do not arise out of contacts with New Jersey.  *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (noting that for specific jurisdiction to apply, the injury must arise out of the defendant's acts in the forum).  The tortious interference and breach of fiduciary duty claims both arise out of conversations, decisions, and acts that took place among the KAIST board members in South Korea.

Similarly, the Plaintiff does not pass the *Calder* test on either of these claims because New Jersey could not be said to be the focal point of either claim.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

The two remaining claims both involve fraud, specifically, the Defendants' contacting Plaintiff in New Jersey and luring him into his position as CEO of Mobile Harbor, Inc. with false promises that KAIST would adequately fund Mobile Harbor, Inc. Ahn states, "During the recruitment process, Defendant Suh and I had numerous conversations which all took place while I was in New Jersey." (Ahn Aff. at ¶ 4).

*In Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146-47 (3d Cir. 1992), the Third Circuit stated, "Personal jurisdiction may be exercised over a non-resident defendant who, while present in the forum state, makes a deliberate misrepresentation during the course of negotiations or other direct oral communications with the plaintiff." In *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985), the Third Circuit held that a Pennsylvania court had personal jurisdiction over a foreign defendant who fraudulently misrepresented the cause of death of the plaintiff's decedent when the defendant was in Pennsylvania, an act which gave rise to a claim for intentional infliction of emotional distress. Even "mail and telephone communications and the like sent by defendants into the forum" may count as purposeful availment. *See Asanov v. Gholson, Hicks & Nichols, P.A.*, 209 F. App'x 139, 141-42 (3d Cir. 2006) (*citing Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n,* 819 F.2d 434, 436-37 (3d Cir. 1987)).

Having not held an evidentiary hearing, the Court must accept Ahn's sworn statements as true. Put together, several of Ahn's statements establish Defendants' purposeful availment of the forum. First, the affidavit alleges that KAIST agents made personal appearances in New Jersey to market the Mobile Harbor project to the Port Authority. Second, the affidavit establishes that KAIST and Suh had conversations with Ahn while Ahn was in New Jersey, including the conversations in which they persuaded him to become the CEO of Mobile Harbor, Inc. The injuries attendant to the fraud claims arise out of some of these communications. *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d at 150. Specific jurisdiction also comports with traditional notions of fair play and substantial justice. *See infra* Part III.D. Thus, Ahn has demonstrated minimal contacts under the specific jurisdiction test as to the fraud claims.

## D. Fair Play and Substantial Justice Analysis

To exert personal jurisdiction over Defendants also comports with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S.at 324. "The Supreme Court of the United States has set forth a variety of relevant factors to the 'fair play and substantial justice' inquiry including 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute' and 'plaintiff's interest in obtaining convenient and effective relief.'" *Sonic Supply, LLC v. Universal White*

*Cement Co.*, 2008 WL 2938051, at *3 (D.N.J. July 29, 2008) (*citing Burger King,* 471 U.S. at 476).

In this case, Suh, the principal defendant and witness is located in Massachusetts.  New Jersey is therefore a more convenient forum for Suh than South Korea.  Massachusetts is not so far from New Jersey as to cause Suh undue hardship in coming to New Jersey to testify at trial.  The difference between Massachusetts and New Jersey for the purposes of KAIST is irrelevant – both are about equally distant from South Korea.  KAIST is a large and powerful organization that will have to work with two principal parties/witnesses who are both in the United States.  Additionally, New Jersey has an interest in protecting its citizens from the fraudulent misrepresentations of non-citizens who solicit contracts within its borders.  *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (finding that California had an interest in "providing effective means of redress" for a resident with a contractual claim against a foreign company that solicited the contract in California via mail.).  For these reasons, it does not offend traditional notions of fair play and substantial justice to subject the Defendants to the jurisdiction of New Jersey.

## IV.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Even though Plaintiff made a prima facie case for personal jurisdiction over Counts 2 and 3, he fails to state a fraud claim, and therefore, the Court will dismiss those Counts of the AVC as well.

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings; if it does consider extraneous documents, the motion must be converted to a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The court may, however, consider matters of public record that are undisputedly authentic without converting the motion to one for summary judgment. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Here, the Court will consider the undisputedly authentic opinion of the South Korean Court in *Ahn I*.

## B.    Binding Effect of *Ahn I*

Defendants claim that *Ahn I* is binding and bars *Ahn II*. The argument is persuasive with respect to the remaining fraud claims.

We begin the analysis by noting that the South Korean Court's decision in *Ahn I* constitutes a valid judgment enforceable in American courts. "The Treaty of Friendship, Commerce and Navigation Between the United States of America and The Republic of Korea elevates a Korean judgment to the status of a sister state judgment." *Choi v. Kim*, 50 F.3d 244, 248 (3d Cir. 1995) (citation omitted). Further, none of the exceptions to the enforcement of such sister state judgments apply to this case. *See id.* Accordingly, this Court will respect the South Korean Court's judgment in the previous litigation.

It is impossible to respect the South Korean judgment and also find that Defendants are liable to Plaintiff for fraud. The elements of fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable

reliance thereon by the other person; and (5) resulting damages. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005). The South Korean Court found there was insufficient evidence to support Ahn's claim that KAIST had agreed to support the operating expenses of Mobile Harbor, Inc. when it was founded. (*Ahn I* at 8). If we assume, as we must, that Defendants made no promise to pay Mobile Harbor, Inc.'s operating expenses, then the Plaintiff cannot state a plausible claim for fraud because there is no material misrepresentation on which Plaintiff reasonably relied. All of Plaintiff's past and future losses were premised upon his belief that Defendants agreed to keep the Mobile Harbor project funded. This Court must honor the South Korean Court's finding that Defendants did not make this agreement. Without a plausible fraud claim, the court will dismiss a claim under Federal Rule of Civil Procedure 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). For these reasons, Counts 2 and 3 will also be dismissed.

## V.    MOTION FOR SANCTIONS

Federal Rule of Civil Procedure 11(b) requires that in all pleadings filed with the court, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11 requires that all parties and their attorneys conduct a reasonable inquiry into the factual and legal merits of their pleadings and are prohibited from submitting pleadings to the court which are frivolous. Rule 11 states, in relevant part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. 11.

In this Circuit, Rule 11 sanctions are appropriate where a claim or pleading is legally or factually baseless from an objective point of view, and made without a reasonable and competent inquiry. "Rule 11 sanctions are based on an objective standard of reasonableness under the circumstances." *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). "The Third Circuit has defined 'reasonableness' in the context of Rule 11 as an objective knowledge or belief at the time of the filing . . . that the claim was well-grounded in fact and law." *Clement v. Pub. Serv. Elec. & Gas Co.*, 198 F.R.D. 634, 637 (D.N.J. 2001). No showing of bad faith is required. *Martin*, 63 F.3d at 1264.

Rule 11's primary purpose is the deterrence of litigation abuse, and sanctions are only applied in the "exceptional circumstance." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (*citing Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)). Courts have developed a stringent standard to evaluate the imposition of sanctions because such sanctions "(1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes; (2) tend to spawn satellite litigation counter-productive to efficient disposition of cases; and (3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering*, 857 F.2d at 194 (internal quotation marks omitted). In short, Rule 11 sanctions are only appropriate when it is clear that a claim has absolutely no chance of success on the merits. *Id*.

Plaintiff's claims are weak for complex procedural reasons, but they are not so blatantly meritless that he deserves sanctions. "[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Doering*, 857 F.2d at 194. The substance of Plaintiff's claims is not baseless. He lost substantial personal assets as a result of what he plausibly claims was improper behavior on the part of Defendants. Even with respect to the procedural issues, there were nonfrivolous arguments for the Court's hearing the case.

## VI.   CONCLUSION

For the reasons set forth above, the motion to dismiss is granted.  The motion for sanctions is denied.  An appropriate order follows.


/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**DATE: November 17, 2014**